BERZON, Circuit Judge,
concurring:
I write separately to emphasize that were our standard of review less deferential, I would have decided the first issue in this case differently. The record contains significant inconsistencies about the officers’ whereabouts at key moments during the surveillance operation. Those inconsistencies raise serious doubts about the credibility of the officers’ testimony, particularly that of Detective Giannone, the only officer to testify to having observed Schultz commit a traffic violation.
1. Giannone testified that he first saw Schultz commit a traffic violation at 9:13 pm at the intersection of Audrie Street and Tropicana Avenue. Giannone then testified that he lost Schultz near Ford Avenue and Las Vegas Boulevard just six minutes later, at 9:19 pm. As best I can tell, the two locations are more than five miles apart via city streets.[1] Given the officers’ stated goal of maintaining their “undercover capacity,” I am dubious that the police could have pursued Schultz for more than five miles — including through or near the Las Vegas Strip — at more than fifty miles per hour, at least without seeing Schultz commit additional moving violations along the way. But Schultz has nev *705 er pointed out the distance between the two locations, here or to the district court, or relied upon that distance to impeach Giannone’s credibility. For that reason, the apparent implausibility of this aspect of Giannone’s story is not a proper basis for reversing the district court’s credibility determination. Also, the issue not having been raised, there may be some ground, of which I am not aware, for reconciling the testimony with the actual distances.
2. Giannone flip-flopped on the stand regarding what the district court correctly characterized as the “important” question whether Giannone, or Sergeant Siwy, first spotted Schultz’s car again at 9:46 pm. Giannone first changed his story only after a break in the proceedings before the magistrate judge, during which prosecutors “refreshed” Giannone’s “recollection.” Giannone again switched gears in his testimony before the district court. Although the district court deferred to Giannone’s ultimate explanation for the “conflict,” if I were the factfinder, I would have been considerably more suspicious about this fickle testimony.
3. Finally, I am skeptical of Giannone’s explanation — memorialized for the first time in a supplemental report nearly a year after the arrest — that about half an hour after the police lost sight of Schultz, two officers in separate patrol cars both saw Schultz within moments of each other, and, in the same minute, Schultz committed another traffic violation. In light of the other discrepancies in the record that I have identified, I would not attribute much weight to Giannone’s ever-shifting narrative.
Despite my serious concerns, I cannot conclude on this record that the district court’s findings were clearly erroneous. See United States v. Hinkson, 585 F.3d 1247, 1251 (9th Cir.2009) (en banc). I therefore concur in the decision affirming the denial of Schultz’s motion to suppress.

. We may take judicial notice of maps, including Google Maps, to determine distances and locations. See McCormack v. Hiedeman, 694 F.3d 1004, 1008 n. 1 (9th Cir.2012); United States v. Perea-Rey, 680 F.3d 1179, 1182 n. 1 (9th Cir.2012).